(*) WILLIAM H. BYRAM *versus* JOHN P. HUNTER.

An order for a specified sum, drawn upon an incorporated company, and payable to order, is not deprived of its negotiability by a statement, truly made therein, that it was drawn in compliance of a vote of the company.

The drawer of a draft, having knowledge that the drawee had, under an assertion of a want of the drawer's effects, refused to pay on presentment, waives the proof of legal notice of the dishonor, by promising to the holder, that he would arrange with the drawee, so that the draft should be paid.

In a suit by the indorsee against the drawer, it will avail nothing to the defendant, that the paper does not, on its face, admit that it was drawn for value.

ON REPORT from *Nisi Prius*, RICE, J., presiding.
ASSUMPSIT.

The Kennebec Log Driving Company are a corporation. They voted "that John P. Hunter be paid two hundred dollars in full for all claims he may have upon the company."

Hunter drew a draft upon the company, as follows; — "Please pay to E. G. Byram or order two hundred dollars, the same being in compliance with a vote of the company." This action is brought upon that draft, the same having been indorsed by the payee to the plaintiff.

The indorser was called as a witness by the plaintiff, and testified that, while the draft was in his possession, he presented it to Abner Coburn, the president of the company, for acceptance and payment; that Coburn, after looking at the account of Hunter on the books of the company, stated that Hunter owed the company, and that therefore he could not pay or accept the draft. The witness further testified that, at his next interview with Hunter, he informed Hunter of Co-

burn's answer; to which Hunter replied, that he would arrange with the company so that the draft should be paid.

On cross-examination, the witness testified that he could not tell how long it was after the draft came into his hands before he presented it to Coburn, but it was the first time he saw him in town; that it was more than two weeks after he presented it to Coburn before he notified Hunter, who was then absent.

The clerk of the company also testified for the plaintiff, that " the reason given for not paying the draft has been that there is a balance due from Hunter to the company."

The plaintiff here stopped; and the defendant's counsel moved for a nonsuit, which motion being denied, a default was entered by consent, with leave to take it off, if in the opinion of the full Court the plaintiff is not entitled to recover on the foregoing testimony.

*Danforth & Woods*, for the defendant.

1. The action being brought by the indorsee, is not sustainable, for the draft was not a negotiable instrument. It is, in legal intendment, payable out of a particular fund. Suppose the amount voted was less than two hundred dollars, or that the vote was illegal, or had been rescinded before the draft was drawn, it could not be paid. The validity of the draft depended on the validity of the vote. The draft, therefore, does not show, upon its face, that it was absolutely and without qualification to be paid. The credit was given to the vote and not to the drawer. Bailey on Bills, 16, and cases there cited.

2. If the order was not negotiable, there is no evidence of indebtedness by the defendant to the plaintiff. It may have been that the defendant sent by the payee, as his servant, for the money voted him by the company. He certainly intended to have that particular money paid over and no other, and if the money was to have been obtained for his own use, we do not perceive how he could otherwise have worded the order. There are no words in it expressing or tending to show that the defendant had received any value. The form of the

order does not carry a personal credit, but the holder must have relied upon the vote of the company referred to therein, and if drawn for the benefit of the payee, it could at most but operate as an assignment of the claim under that vote. This is a common practice, and is, perhaps, the most reasonable view of the case. *Legro* v. *Staples & trustee,* 16 Maine, 252. In either case it could create no debt against the defendant, which could be recovered in this action.

3. If the instrument is to be deemed a negotiable one, there was no sufficient demand or notice.

4. The case shows nothing which can excuse the want of seasonable demand and notice. The decided cases have as yet recognized but one exception to the rule requiring such demand and notice ; and that is an absolute want of effects in the hands of the drawee ; an exception which has always been matter of regret to the Courts. *Bickerdike* v. *Bollman,* 1 D. & E. 405. Hence, when the drawer has reasonable expectation that the bill will be accepted, or there is a running account between the drawer and drawee, a presentment and notice has been considered necessary. *Campbell* v. *Pettengill & al.* 7 Maine, 126 ; Opinion of Ellenborough in *Brown* v. *Maffey,* 15 East, 221 ; *Rucker & als.* v. *Hiller,* 16 East, 43 ; *Prideux* v. *Collier,* 2 Starkie, 57.

Now we contend, that the drawer had reasonable expectation, that the order would be accepted. The language of the vote implies this. It was a matter unconnected with other transactions, and the vote was to pay unconditionally, not to allow an account.

Again, it appears from the testimony, that there was an account, between Hunter and the company, at least that is the just inference. And this brings us to another point, that in fact it does not appear but that the drawer had funds in the hands of the company, when the order was drawn, and the burden of proof is upon the plaintiff to show this. Bailey on Bills, Phillips & Sewall's Ed. 303.

The most that can be made out of the testimony is, that there was a balance due from Hunter, when the draft was

*presented*; and even that is not shown satisfactorily or by competent evidence. Nothing shows that the balance was not the other way when the order was *drawn;* and if the company had effects then, it would be sufficient. Bailey on Bills, 307.

*Evans,* for the plaintiff.

HOWARD, J. — It is essential to a bill of exchange, that it should be payable in money, absolutely, and without any contingency which would embarrass its circulation. Contingencies as to the amount, the event, the fund, or the person, have been regarded as such embarrassments to the negotiation of bills and notes, as to render them invalid for commercial purposes.

The instrument declared on, in this case, is a draft upon the drawees to pay to the assignor of the plaintiff, or order, two hundred dollars, in compliance with a vote of the company of which they were the directors. It is a request for them to pay a particular sum of money, due from the company to the drawer. It is payable absolutely. Upon its face there is no apparent uncertainty affecting its negotiability, and technically, it may be regarded as a bill of exchange. Chitty on Bills, c. 5, p. 132, 139; Bayley on Bills, c. 1, § 6; Story on Promissory Notes, §§ 22, 25, 26; Story on Bills, § 46.

From the evidence reported, we cannot determine that the defendant had not reasonable expectation that the draft would be duly honored, and he was, consequently, entitled to notice of its presentment and dishonor.

It appears that the bill was presented to the president of the board of directors for acceptance and payment, and that he declined accepting or paying it, alleging that the drawer owed the company. Notice of this was given to the defendant, though, as it would seem, not seasonable, and with full knowledge of the facts, he agreed " to arrange with the company, so that the draft should be paid." This amounts to a waiver of the consequences that might have followed the laches of the holder, in presenting the bill, or giving notice

of its dishonor. Chitty on Bills, c. 10, p. 501, a; Story on Promissory Notes, § 364.

*Judgment on the default.*

SHEPLEY, C. J., and WELLS, RICE and HATHAWAY, J. J., concurred.